**UNITED STATES of America**

v.

**Alphonzo Leon WILLIAMS and Boropa Kumi Williams.**

**CR 93–AR–248–S.**

United States District Court, N.D. Alabama, Southern Division.

Jan. 8, 1996.

Adam Michael Porter, Birmingham, AL, for Alphonzo Leon Williams.

Rick L. Burgess, Birmingham, AL, for Boropa Kumi Williams.

Caryl Privett, U.S. Attorney, William Gott Simpson, U.S. Attorney's Office, Birmingham, AL, for the U.S.

### MEMORANDUM OPINION

ACKER, District Judge.

In the above-entitled criminal case, as an integral part of the sentences imposed on defendants, Alphonzo Leon Williams ("Alphonzo") and Boropa Kumi Williams ("Boropa"), this court, pursuant to 18 U.S.C. § 3663, ordered them, jointly and severally, to make restitution in the amount of $3,500.00 to Linda Storey ("Storey"), the mother of Richard Whitehead ("Whitehead"), who died during the carjacking of which defendants had been found guilty in violation of 18 U.S.C. § 2119 (prior to the 1994 amendment), which provided:

Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

This $3,500.00 was the cost of Whitehead's funeral as reflected in defendants' separate pre-sentence reports and in Boropa's written plea agreement in which he agreed to pay the $3,500.00 as a condition of supervised release.

In contrast to Boropa's guilty plea, Alphonzo went to trial and was found guilty by a jury, which thereafter, in a bifurcated penalty hearing, answered a special interrogatory as follows:

Did the attempt by defendant Alphonzo Leon Williams to take a motor vehicle from the person or presence of another by force and violence or intimidation result in the death of Richard "Scott" Whitehead?

YES _____ NO _X_

This question was necessitated by the fact that the gunshot that killed Whitehead came from his passenger's gun rather than from Alphonzo's gun.

Alphonzo's pre-sentence report contained the following uncontradicted information under the heading "Financial Condition: Ability to Pay:"

The defendant states that he has no substantial assets or liabilities. There is no indication otherwise.

During neither Alphonzo's nor Boropa's sentencing was there any proof offered of the appointment of a personal representative for Whitehead. In other words, no "victim's estate" was shown to exist under the only procedure in Alabama for legally creating a decedent's estate. Neither was there any proof, whether by testimony, documents, or hearsay, of any medical expenses incurred or paid by Whitehead or by Storey.

Despite the jury's having expressly found that Whitehead's death was not the result of the carjacking, this court, in sentencing Alphonzo, departed upward pursuant to U.S.S.G. § 5K2.1. This particular guideline provides: "If death resulted, the court may increase the sentence above the authorized guideline range." There is, of course, a difference between the exercise of discretion under the sentencing guidelines and the construction of a criminal statute. Therefore, on May 5, 1995, Alphonzo's conviction and sentence, including the upward departure, were affirmed by the Eleventh Circuit. *United States v. Williams*, 51 F.3d 1004 (11th Cir. 1995). In the Eleventh Circuit's decision there was no mention of Alphonzo's restitution obligation to Storey. This constitutes convincing proof that Alphonzo made no appellate complaint about being ordered to pay Storey $3,500 as a condition of supervised release after he completes 25–years custody. Boropa did not appeal from the sentence imposed on him after his plea of guilty. His sentence incorporated the restitution obligation that he expressly undertook in his plea agreement. Both defendants remain in custody. It should come as no surprise that

neither defendant has paid a dime toward the $3,500.00 obligation to Storey.

On November 22, 1995, the United States filed the motion being addressed by this opinion. Only in one respect does the motion seek to amend the two orders of judgment and commitment. A copy of the government's motion, including its exhibits, is attached hereto as an appendix. Reading it is necessary to a full understanding of this opinion. The motion requests this court to transfer a substantial portion of the joint restitution obligation from Storey to the Alabama Crime Victims Compensation Commission ("Commission"), which has paid monies to Storey out of its victim restitution fund.

After the reappointment of counsel for defendants, and after notice was given to Storey and to the Commission, the government's motion was orally heard on November 28, 1995. Defendants themselves were not present. The proof offered by the United States Attorney on behalf of the Commission was entirely consistent with the allegations of the motion. In addition to the letters from the Commission that are exhibits to the motion and that show payment by the Commission to Storey of $3,296.00 for Whitehead's medical and funeral expenses, the United States offered a so-called "subrogation agreement" executed by Storey in favor of the Commission *after* this court had entered its orders of restitution in favor of Storey. That agreement (Govt's Exhibit # 1 at the motion hearing) provided, *inter alia:*

> I agree to notify the Commission in writing prior to filing a civil lawsuit resulting from this criminal action, to allow the Commission an opportunity to intervene if they so desire. I agree to repay the Commission in full the amount they paid on my claim if I recover money from a civil lawsuit, from restitution, from an insurance settlement, or from any other collateral source. I understand that failure to comply with this agreement will result in criminal charges against me in the event that funds are available and the Commission is not notified of such funds.

In addition to, or as an outgrowth of, the foregoing facts and procedural circumstances, several interesting ultimate facts appear. First, the "subrogation agreement" is, in reality, an agreement by Storey to *refund* the Commission *only* in the event she should at some future date recover the same money from a collateral source. She has not recovered from any collateral source except the Commission itself. The agreement does not purport to constitute a direct or present "assignment" to the Commission of any possible claim Storey then had against a third party like Alphonzo or Boropa. The letter of October 17, 1995 from the Commission to the United States Attorney, an attachment to the current motion, speculates that the Commission *"may be* subrogated to this amount of court ordered restitution." (emphasis supplied). There is a difference between "may be" and "is."

Second, and of utmost importance, there is nothing in the pertinent provision of the Victim and Witness Protection Act (18 U.S.C. § 3663) that expressly permits or inferentially contemplates an assignment by a victim to another of her judgment of restitution *after* the sentencing order has been entered. At the original and only sentencing hearings conducted in this case, no evidence was offered to suggest, much less to prove, that either a victim's estate or the victim's mother had received or would receive compensation from any other source for the victim's funeral costs. Neither was there any evidence whatsoever that any medical expense had been incurred or paid by the deceased or by Storey. If there had been an objection interposed by Alphonzo, whether (1) that, in fact and law, there was no "victim's estate"; or (2) that, as determined by the jury, Whitehead had not been killed as a proximate consequence of the carjacking, precluding any payment to Whitehead's estate; or (3) that Alphonzo is the proverbial impecunious turnip with no blood in it; or (4) any combination of (1), (2) and (3) above, this court would not have ordered restitution to Storey by Alphonzo, although the court probably would have required Boropa *to* honor his plea agreement. The court certainly could not and would not have ordered restitution for medical expenses without any claim, much less any proof, of medical expenses having been paid.

The pertinent language of 18 U.S.C. § 3663 is as follows:

> (a)(1) The court, when sentencing a defendant ... may order ... that the defendant make restitution to any victim of such offense.
>
> * * * * * *
>
> (b) The order may require that such defendant—
>
> (2) in the case of an offense resulting in bodily injury to a victim—
>
> (A) pay an amount equal to the *cost of necessary medical and related professional services* ....
>
> * * * * * *
>
> (3) in the case of an offense resulting in bodily injury also results in the death of a victim, pay an amount equal to the *cost of necessary funeral and related services;*
>
> * * * * * *
>
> (c) If the court decides to order restitution under this section, the court shall, *if the victim is deceased,* order that the restitution be made to the *victim's estate.*
>
> * * * * * *
>
> (e)(1) *The court shall not impose restitution with respect to a loss for which the victim has received or is to receive compensation, except that the court may, in the interest of justice, order restitution to any person who has compensated the victim for such loss to the extent that such person paid the compensation* ....

(emphasis supplied). If, before Alphonzo's sentencing hearing, the Commission had already paid Storey for her son's necessary medical expenses and/or necessary funeral expenses, this court perhaps would have ordered payment of restitution to the Commission, that is, if the court had determined that Alphonzo could reasonably have been expected to pay it. If a victim, the beneficiary of a restitution order having the effect of a civil judgment, can assign that benefit to the Commission, that same victim could use the same prospective receipt from the perpetrator as collateral for a loan if a lender were so foolish as to lend its money upon the security of a highly speculative hope of obtaining payment from a deadbeat carjacker serving a 25-year prison term.

There are reasons other than those implicit in the foregoing discussion why this court will not grant the request here being urged by the United States Attorney on behalf of an agency of the State of Alabama. The most important of these reasons is that this court lacks the *power* to grant the motion. After all, this is a court of limited jurisdiction. This court has been referred to no statute or court decision that authorizes the amendment of an order of criminal judgment and commitment on motion of the United States, on motion of a victim, or on motion of a victim's purported assignee. This jurisdictional obstacle became more formidable in this case when the Eleventh Circuit affirmed Alphonzo's sentence, including its restitution component. If it were Alphonzo who was seeking a change in his sentence, he might have his foot in the door, but it is not he who is here asking for an alteration of his restitution obligation.

 If this court should now substitute for Storey (who is *not* the "victim's estate" described in § 3663) a state agency that paid her some of the same money described in the restitution order, such an order would violate the rule of lenity. The language of § 3663, which, *inter alia,* is a *penal* statute, must be construed in favor of defendants. *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), makes clear that the victim protection provisions of the Victim and Witness Protection Act are designed, *inter alia,* to achieve the penal objective of *rehabilitation.* If the United States Attorney wants to accomplish the legislative goal of rehabilitating Alphonzo and Boropa by the device of calling upon them to pay the *victim,* paying the *Commission,* an agency of the State of Alabama, may very well not have the desired effect. It would be an anomaly for the victim restoration fund of a state, funded by the federal government, to become the beneficiary of a federal victim restitution order and to recover federal money the state agency paid the victim of a state crime that happens also to be the federal crime in which

the restitution order was entered. It would be a round robin affair.

Insofar as this court has been able to ascertain, this is the first motion like this one ever filed. To grant it would encourage United States Attorneys to undertake the highly unusual and questionable representation of *assignees* of restitution orders, with no statutory basis for such a representation. It is already an impossible task for the United States Attorney simultaneously to represent the government and the victim, the strange mandate of the Victim and Witness Protection Act, but the Act clearly does not authorize the United States Attorney to represent a subsequent assignee.

Finally, if the court should order these defendants jointly and severally to pay the requested sum of $3,296.00 to the Commission, $204.00 of the original $3,500.00 would still remain, ostensibly to be paid to Storey. This presents a question for which neither the United States Attorney nor her only non-government client, Storey, suggests an answer. Should the Commission or Storey be paid first out of restitution payments received by the Clerk from defendants? This question cannot be left to the United States Attorney, or to the Clerk, or to the National Fine Center, or to the Probation Service. This court will not risk trying to fashion an entirely new or substitute restitution order without agreement both by the defendants and by Storey. The "due process" implications of the procedure here proposed present enough of a problem without considering the administrative headaches that would result from trading in prospective restitution benefits.

The court does not here undertake to speak to the question of whether Storey is obligated to pay over to the Commission any of the monies she should later receive, if any, from Alphonzo and Boropa. If the court chooses not to answer the question it *is* being asked, it should not answer a question it *is not* being asked.

This court suspects that all of the foregoing discussion is academic. It is as futile an exercise as was the awarding of restitution in the first place. The chance of Storey getting blood out of these two turnips is between slim and none. The taxpayers' expenses in attempting to collect and disburse it will eat up the few dollars the defendants' prison incomes, if any, will produce, and they have produced nothing yet.

The government's motion will be denied by separate order.

## APPENDIX

### MOTION TO AMEND JUDGMENT AND COMMITMENT ORDERS

COMES NOW the United States of America, by and through its counsel, Caryl P. Privett, United States Attorney for the Northern District of Alabama, and William G. Simpson, Assistant United States Attorney for that district, and respectfully moves this Honorable Court to amend the Judgment and Commitment Orders in the above-entitled and numbered action, thereby directing the Clerk of the Court to transmit future restitution payments for funeral expenses received from the said defendants to the Alabama Crime Victims Compensation Commission until the sum of THREE THOUSAND TWO HUNDRED NINETY–SIX DOLLARS ($3,296.00) has been paid in full.

As grounds, wherefore, the government states:

1. That on March 21, 1994, and again on March 24, 1994, this Court entered an order directing, *inter alia*, that defendants Alphonzo Leon Williams and Boropa Kumi Williams jointly and severally pay the sum of $3,500 in restitution through the Clerk of the Court to Mrs. Linda Story, in compensation for funeral expenses incurred by the victim's family.

2. That since the entry of those orders, the victim's family has applied for and has received monies totalling $3,319.00 from the Alabama Crime Victims Compensation Commission, which was paid to compensate the family for medical and funeral expenses incurred as a result of the crime alleged in the indictment. (*see* letter dated September 30, 1994, attached hereto)

3. That due to the payment of this money to the family, the Alabama Crime Victims Compensation Commission submits that it is

rightfully subrogated to the amount paid, less a rebate of $23.00, for a total of $3,296.00, and respectfully requests that the Court modify its orders to so reflect. (*see* letter dated October 17, 1995, attached thereto)

4. That the undersigned Assistant United States Attorney has spoken with Mrs. Linda Story by telephone concerning this matter, and submits to the Court that Mrs. Story concurs with the Commission's request and with the government's motion.

Respectfully submitted on this the 22nd day of November, 1995.

> CARYL P. PRIVETT
> United States Attorney
> /s/ William G. Simpson
> WILLIAM G. SIMPSON
> Assistant United States Attorney

* * *

ALABAMA CRIME VICTIMS
COMPENSATION COMMISSION

P.O. Box 1548

Montgomery, Alabama 36102–1548

(334) 242–4007

October 17, 1995

Ms. Susan Means
U.S. Attorney's Office
Room 200–Robert S. Vance Fed. Bldg.
1800 Fifth Avenue North
Birmingham, Alabama 35203

Re: State v. ALPHONZO
 WILLIAMS/BOROPA
 WILLIAMS
 CC Number CR93–248–05
 Victim: RICHARD WHITEHEAD

Dear Ms. Means:

According to information from court records, the above defendants have been ordered to pay restitution in the amount of $3,500.00. The Commission has paid compensation in behalf of the victim in the amount of $3,296.00 for medical and funeral expense and may be subrogated to this amount of court ordered restitution.

I am asking your assistance in reviewing your file to determine if the restitution ordered was the same expenses paid by the Commission. If so, please ask the Court to authorize the Court Clerk to reimburse the Commission accordingly.

Your assistance in this matter will ensure that the Crime Victim Compensation Commission will receive reimbursement. I appreciate your continued support.

> Sincerely,
> /s/ Sara S. Myers
> Sara S. Myers
> Compensation Specialist

* * *

ALABAMA CRIME VICTIMS
COMPENSATION COMMISSION

P.O. Box 1548

Montgomery, Alabama 36102–1548

(205) 334–4007

September 30, 1994

VSO Acting
Victim Service Officer of Jefferson County
District Attorney's Office
801 21st Street North
Birmingham, AL 35263

Defendant: Alphonzo Williams/Boropa
Williams
Court Case:
Victim: Richard Whitehead
Claimant: Linda Story
ACVCC # : 94–0781

Dear VSO:

The above referenced claim for compensation has been approved by this Commission. The claimant has been awarded compensation in the amount of $3,319.00. (Plus $0.00 Emergency Award.)

Enclosed you will find a summary of payments issued by the Commission.

Please Note: If restitution has not been ordered, please ask the judge to order restitution to the Compensation Commission in the amount that was awarded to the victim. If restitution has already been ordered, please ask the judge to amend his order to insure that the Compensation Commission

**510**

receives the amount that has been paid to the victim. The law specifies that the victim must reimburse the Commission if he/she is paid compensation and later receives restitution from the defendant. A restitution affidavit is enclosed.

If the judge will not amend his order, please notify us so that we can track recovery of payments to the victim. If no victim assessment fine was ordered, we are also requesting that the judge amend his order to include the mandatory fine.

Thank you for your cooperation in this matter.

Sincerely,

/s/ Anita Armstrong Drummond
Executive Director

September 14, 1994
Defendant: Alphonzo Williams/Boropa Williams
Case No.
Victim: Richard Whitehead
ACVCC No. 94–0781

Payment issued to:

| | |
|---|---|
| Department of Surgery UAHSF | $ 100.00 |
| Linda Story | $ 32.40 |
| Linda Story | $3,000.00 |
| Linda Story | $ 163.60 |
| Radiology Professional Services | $ 23.00 |

Total Paid $3,319.00